**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROBERT L. FELDER,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      No. 07 C 6501
                                     )
CITY OF CHICAGO et al.,              )
                                     )
            Defendants.              )


**MEMORANDUM OPINION**

Before the court is defendants' motion for summary judgment. We grant defendants' motion for the reasons explained below.

**BACKGROUND**

Plaintiff Robert Felder was arrested and charged with soliciting a prostitute — actually defendant Cherron Bady, an undercover police officer posing as a prostitute — on the evening of July 12, 2007. (Def. Local Rule 56.1 Stmt. of Material Facts (hereinafter "Def. Stmt."), ¶¶ 8-10.) In connection with his arrest, the City of Chicago seized and impounded Felder's vehicle pursuant to Municipal Code § 8-8-060. (Id. at ¶ 11; Notice of Vehicle Impoundment, attached at Ex. E to Def. Stmt.); see also Municipal Code of Chicago § 8-8-060(d)(1) ("A motor vehicle that is used in violation of this section ['Street solicitation for prostitution'] . . . shall be subject to seizure and impoundment under this subsection."). Shortly after he was arrested and

released, Felder paid a fine of $1,800.00 — including $600 for outstanding parking tickets — and the City released his car. (Def. Stmt. ¶ 12; Felder Dep., attached as Ex. C to Def. Stmt., at 76.) On July 16, 2007, Bady filed a complaint against Felder in the Circuit Court of Cook County for soliciting prostitution on a "public way." (Def. Stmt. ¶ 13.); see also Municipal Code of Chicago § 10-8-515(a) ("No person may: (i) stand upon, use or occupy the public way to solicit any unlawful business; or (ii) interfere with or impede any pedestrian or anyone in a vehicle on the public way, for the purpose of soliciting any unlawful business."). Three days later, the City's Department of Streets and Sanitation sent Felder an Owner Notification Statement informing him that he was entitled to request a hearing before the City's Department of Administrative Hearings to contest the impoundment. (Id. at ¶ 14; Owner Notification Statement, attached as Ex. G to Def. Stmt.) A default judgment was entered and later vacated after Felder belatedly responded to the Notification Statement and a hearing was scheduled for October 31, 2007. (Def. Stmt. at ¶¶ 15-17.) In the interim, the criminal case against Felder was dismissed. (Def. Resp. to Pl. Local Rule 56.1(a) Stmt. of Material Facts (hereinafter "Def. Resp.") at ¶ 2; see also Felder Dep., attached as Ex. C to Pl.'s Mem., at 80-81.)

The impoundment hearing, held before an Administrative Law Officer ("ALO"), took approximately twenty minutes to complete.

(Audio Recording of Hearing of Oct. 31, 2007, attached as Ex. B to Pl. Local Rule 56.1(a) Stmt. of Material Facts (hereinafter "Pl. Stmt.").)  The City called one witness, Bady, who testified that she "made some hand gestures to have [Felder] pull over" and asked him, through the open window of his car, whether he wanted oral sex in exchange for $10. (Trans. of Hearing of Oct. 31, 2007, attached as Ex. A to Pl. Stmt., at 2-3, 5.)  According to Bady, Felder said "yes."  (Id. at 3.)  She also testified that he showed her his wallet or money (or both) to indicate that he had the means to pay. (Id. at 3, 5.)  Felder, who represented himself at the hearing, cross-examined Bady and testified on his own behalf.  (Id. at 5-10.)  According to Felder, Bady "frantically" waved him down from the side of the road and asked him for $10.  (Id. at 9.)  When he asked her "what was going on," she responded with the same question: "Do you have $10?"  (Id. at 7.)  When he said "[y]es I have it," Bady and defendant Charles Johnson — Bady's partner that evening — arrested him. (Id.; Def. Stmt. ¶¶ 9-10.)  In Felder's version of events, oral sex was never mentioned, (see id. at 7 ("And at no point did she mention anything about giving me any type of oral sex or anything like that.")), although when cross-examining Bady, and in his brief closing argument, Felder appeared to indicate that Bady did offer him oral sex.  (See id. at 5 ("FELDER: Who suggested any sexual act? [. . .] FELDER: Who initiated?  I didn't - Who initiated?"); id. at 10 (arguing that it

was Bady who "initiated any type of verbal act of saying any type of sexual connotations").) The ALO asked questions throughout the proceeding and was evidently skeptical that Felder, driving in a neighborhood purportedly known to harbor prostitutes, innocently pulled over to "see what was going on." (Id. at 2; see also id. at 8.) After hearing closing arguments, the ALO stated her findings of fact — essentially finding that Bady had been truthful and that Felder had not — and concluded that the City had "proven its case by a preponderance of the evidence." (Id. at 10-11 ("There was a conversation between [Bady and Felder] wherein the respondent agreed to pay the officer 10 dollars for head, which is street terminology for oral copulation.").) Felder was found "liable" for violating Municipal Ordinance § 8-8-060. (Id. at 1, 11.) He was entitled to appeal, but chose not to because he "didn't want to spend any more money." (Felder Dep. at 89; Def. Stmt. at 26.)

Felder has filed a three-count complaint in this court requesting damages under section 1983 for violations of his constitutional rights (Count I), and alleging common law claims for false arrest (Count II) and intentional infliction of emotional distress (Count III). Defendants have moved for summary judgment on all three counts, arguing that the ALO's findings preclude Felder from re-litigating whether the defendants had probable cause to arrest him.

## DISCUSSION

**A.   Legal Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999).  "Summary judgment should be denied if the dispute is 'genuine':  'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

**B.   Whether the City is Estopped or Otherwise Prohibited from Raising Preclusion.**

Felder argues that the City's own rules provide that issues decided by an ALO are not entitled to preclusive effect.  He relies on Code § 2-14-130, which provides that,

> [n]othing in this chapter shall affect the *jurisdiction*
> of the Department of Business Affairs and Licensing, the
> Chicago Commission on Human Relations, the Zoning Board
> of Appeals, the Personnel Board, the Board of Ethics, the
> Police Board, or the Commission on Chicago Landmarks.

Municipal Code of Chicago § 2-14-130 (emphasis added). Felder reads this provision to permit the City to "ignore" the results of an impoundment hearing and proceed against the same respondent before different agency. (Pl. Mem. at 5.) It would be unjust, he argues, to hold Felder to a different standard. This argument appears to confuse preclusion and jurisdiction. The fact that the authority conferred on the Department of Administrative Hearings does not impinge upon the jurisdiction of other City agencies does not mean, or even imply, that the City is free to re-litigate the same issues before different agencies.[1]

Felder also argues that the City is judicially estopped from relying on preclusion based upon a prior case in which, he claims, the City argued that preclusion was not warranted. "Judicial estoppel may apply when (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

---

[1] Felder also conflates preclusion and preemption; the latter is not at issue in this case. (See Pl. Mem. at 4, 11.)

United States v. Christian, 342 F.3d 744, 747 (7th Cir. 2003).

Felder cites a another impoundment hearing, involving a different

respondent, in which the ALO refused to admit portions of the

transcript from the respondent's driver's license suspension

hearing.  At that prior hearing, a judge determined that the

arresting officers lacked probable cause to believe that the

respondent was intoxicated and rescinded the suspension.  The

record of the case is incomplete — we do not know, for instance,

what the City actually argued to say whether it has taken a

"clearly" inconsistent position in this case.[2]  It is clear,

however, that the earlier impoundment hearing involved entirely

unrelated events.  Cf. Astor Chauffeured Limousine Co. v. Runnfeldt

Inv. Corp., 910 F.2d 1540, 1547 (7th Cir. 1990) ("The principle is

that if you prevail in Suit # 1 by representing that A is true, you

are stuck with A in all later litigation *growing out of the same*

*events*.") (emphasis added).  Felder insists that judicial estoppel

is warranted because in both cases "a party was attempting to

litigate an issue that had already been decided." (Pl. Mem. at 7.)

The second prong of the test is met when the facts at issue in the

two proceedings are the "same," not when the issues are arguably

---

[2]/  Felder relies primarily on the affidavit of a lawyer who participated
in the hearings. (See Aff. of Robert F. Schrimple, attached as Ex. D to Pl.'s
Mem.)  Defendants have moved to strike the affidavit on the ground that it
contains "rank hearsay."  We deny defendants' motion as moot in light of our
conclusion that judicial estoppel would not be warranted even if Schrimple's
affidavit was admissible in its entirety

analogous.  Cf. Christian, 342 F.3d at 747-48 ("The prosecutions of Smith and Hahn arose out of the same core set of facts that led to Christian's indictment, establishing the second part of the test.").  Judicial estoppel does not apply in this case.

## C.  Whether Felder is Precluded from Challenging the Officers' Probable Cause to Arrest Him.

"[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) (internal quotation marks and citations omitted).  This case involves the unreviewed decision of a municipal agency, not a state agency, and the parties have not cited any Illinois authorities squarely addressing the distinction. Cf. Eilrich v. Remas, 839 F.2d 630, 633 (9th Cir. 1988) (looking to California law to determine whether facts found by a municipal agency were entitled to preclusive effect in federal court).  In Village of Oak Park v. Ill. Dept. of Empl. Sec., 772 N.E.2d 951, 953 (Ill. App. 2002), the court held that the plaintiff could not re-litigate facts decided at a hearing conducted by Oak Park's Board of Fire and Police Commissioners.  The Board's decision was affirmed on appeal by two Illinois state courts, id., but "[w]here res judicata applies, it attaches to the administrative decision, rather than to the decision of the circuit court when judicial

review is sought, as long as there is no discrepancy between the two." Osborne v. Kelly, 565 N.E.2d 1340, 1342 (Ill. App. 1991) (referring to both claim and issue preclusion); see also Cosey v. City of Chicago, 33 F.Supp.2d 714, 719-20 (N.D. Ill. 1999) (collecting cases from this district according preclusive effect to decisions of Chicago's Police Board). Here, Felder chose not to appeal the ALO's decision, but that does not undercut the decision's preclusive effect. See Illinois Health Maintenance Org. Guar. Ass'n. v. Dept. of Ins., 864 N.E.2d 798, 816 (Ill. App. 2007) ("Where a decision of an administrative agency is not appealed, the decision is given collateral estoppel effect.").[3] We conclude that Illinois courts would apply the same standard to both state and municipal agencies: "[f]act issues finally decided in an administrative proceeding that is judicial in nature preclude litigation of those same fact issues in a subsequent proceeding." Village of Oak Park, 772 N.E.2d at 582.

1. *Whether the ALO resolved an issue properly before the Department of Administrative Hearings.*

The ALO conducted a "full hearing" after which she concluded, by a preponderance of the evidence, that Felder's car was used in violation of § 8-8-060. See Municipal Code of Chicago § 2-14-132(2) (The purpose of a full hearing is to "challenge whether a

---

[3] See also Eilrich, 839 F.2d at 633 ("If collateral estoppel is not applicable to unreviewed municipal decisions, litigants will be encouraged to avoid state court review of municipal administrative determinations in order to obtain federal review of their claims.").

violation of this code for which seizure and impoundment applies has occurred."); (Trans. of Hearing of Oct. 31, 2007 at 10-11 ("There will be a finding of liable, and a fine of $1000, plus towing and storage.").)[4]   The hearing necessarily explored the circumstances of Felder's arrest in order to establish the underlying violation — solicitation of a prostitute — justifying the impoundment.[5]   The disputed issue was, therefore, properly before the ALO.

2.   *Whether the ALO acted in a judicial capacity*.

The "essential elements of an adjudication" include:

[T]he opportunity to be represented by counsel, pretrial discovery, the opportunity to present witnesses and exhibits, the opportunity to cross-examine adverse witnesses and object to the admission of evidence, and the right to an impartial decisionmaker.

East Food & Liquor, Inc. v. U.S., 50 F.3d 1405, 1413 (7th Cir. 1995).   Impoundment hearings differ in certain respects from judicial trials.   Cf. Czajkowski v. City of Chicago, Ill., 810

---

[4]   The defendants appear to take the position that the ALO conducted a "preliminary hearing," the purpose of which is to determine whether "there is probable cause to believe that the vehicle was used in a violation of his code for which seizure and impoundment applies." See Municipal Code of Chicago § 2-14-132(1); (Defs.'s Mem. at 3 ("[O]n plaintiff's request, an administrative hearing was held to determine whether the defendants had probable cause to believe that plaintiff's vehicle was used in the solicitation of an act of prostitution.").   Whereas the ALO ruled that Felder's vehicle was, in fact, used in the violation.   See Municipal Code of Chicago § 2-14-132(2) (If the ALO concludes that the vehicle was "used in the violation, the [ALO] shall enter an order finding the owner of record *liable* to the city . . . .") (emphasis added).

[5]   The ALO did not specify which portion of § 8-8-060 she was relying on, but we note that the Code prohibits, among other things, "respond[ing] to the beckoning of a prostitute in a public place by inquiring about, negotiating for, *accepting an offer of* or engaging in an act of prostitution." See Municipal Code of Chicago § 8-8-060(f) (emphasis added).

F.Supp. 1428, 1447 (N.D.Ill. 1992) ("Most administrative proceedings, while providing due process protections, do not follow the same procedures as do courts."). The "formal and technical" rules of evidence and procedure do not apply. Dept. of Admin. Hearings Procedural Rules & Regs. Ch. 8, § 8.5. Evidence, including hearsay, is admissible "if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." Id. And respondents must obtain the ALO's leave to conduct pre-hearing discovery and to subpoena witnesses and documents. Id. at Ch. 6, §§ 6.3, 6.4. But the procedural limitations Felder faced in the prior proceeding did not meaningfully impact his hearing. See EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc., 746 F.2d 375, 377-78 (7th Cir. 1984) ("[W]e are unable to agree that procedural limitations in the prior proceedings impaired EZ's presentation of its case."). He does not claim that he was denied pre-hearing discovery, nor does he argue that additional evidence was necessary to fairly resolve the disputed issue. Two witnesses with first-hand knowledge of the alleged violation, Bady and Felder, testified under oath and were cross-examined. Johnson, Bady's partner, did not testify. But there is no evidence that Felder took any steps to secure his presence, or the presence of any other officer, at the hearing. See Czajkowski, 810 F.Supp. at 1447 ("[I]t is only necessary that the opportunity for full litigation be available; it is not

required that a party exercise that opportunity."). Felder was given the opportunity to object to evidence, (see Trans. of Hearing of Oct. 31, 2007 at 4), and it appears that the case was decided on the basis of evidence that would be admissible in this court. Both parties delivered closing arguments, after which the ALO issued findings of fact and conclusions of law. Dept. of Admin. Hearings Procedural Rules & Regs. Ch. 9, § 9.4 ("Each party may be afforded an opportunity to make a closing argument."). Felder's *pro se* status is relevant to whether it would be fair to apply collateral estoppel, see *infra*, but he did have the opportunity to retain a lawyer. See id. at Ch. 5, § 5.1 ("Parties may represent themselves, or may be represented by an attorney at their own expense.").

We agree with Felder, in principle, that the opportunity to present his case, and to challenge the City's, was meaningless if the presiding officer was not fair and impartial. See, e.g., Hall v. Marion School Dist. No. 2, 31 F.3d 183, 191 (4th Cir. 1994) ("Clearly decisionmakers who maintain a bias against one of the parties litigating before them are not acting in a judicial capacity."). But we reject his suggestion that an ALO employed by the City cannot conduct a fair hearing. See Amundsen v. Chicago Park Dist., 218 F.3d 712, 716 (7th Cir. 2000) (hearing officer's employment by Park District insufficient to establish actual bias); see also Municipal Code of Chicago §§ 2-14-040 and 2-14-050 (ALO's,

who must be attorneys licensed for at least three years and must
undergo "a formal training program," "shall have all powers
necessary to conduct fair and impartial hearings.").[6] Felder makes
much of the fact that the ALO actively participated in the hearing,
and interrupted him at points, but the transcript indicates that
her participation was appropriate.  When Felder testified in his
own defense, the ALO conducted what amounted to a direct
examination.  (Trans. of Hearing of Oct. 31, 2007 at 6-8.)  When
testimony was unclear, she asked additional questions to clarify.
(See, e.g., id. at 5 (clarifying that Bady asked Felder if he
wanted oral sex, not vice versa).)  At one point she admonished the
City's attorney for "leading" his witness.  (Id. at 2 ("ALO: Did
the vehicle stop?  I think you're leading her counsel.  She said
the vehicle was Southbound on Exchange.  What happened next?").
She may have indicated at one point that she thought Felder's
version of events seemed implausible.  (Id. at 8 ("You thought this
woman that was standing on the corner with a long, black wig, belly
hanging out and blue jeans and high-heeled shoes was just asking
you for $10?").)  But because she was the trier of fact, we do not
believe that Felder was prejudiced by her pointed question.  Felder
has not overcome the "well-established presumption of honesty and

_____

[6]/  Insofar as Felder is also attempting to assert a due-process claim —
and not simply challenging the grounds for applying collateral estoppel — we
agree with defendants that the claim is improperly raised.  See Shanahan v. City
of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his
complaint through arguments in his brief in opposition to a motion for summary
judgment.").  The claim has no merit, in any event, for the reasons stated above.

integrity in those serving as adjudicators." <u>Amundsen</u>, 218 F.3d at
716 (citation and internal quotation marks omitted).  Although the
hearing itself was brief, we conclude that the proceeding
"incorporated all the essential elements of an adjudication." <u>East
Food & Liquor, Inc.</u>, 50 F.3d at 1413.

> 2. *Whether Illinois courts would give preclusive
> effect to the ALO's fact finding.*

Defendants rely on the collateral-estoppel doctrine, which
applies when: (1) the fact decided in the earlier litigation was
material and identical to the one in the current proceeding; (2)
"there was a final judgment on the merits in the earlier
adjudication;" and (3) "the party against whom estoppel is asserted
was a party or was in privity with a party in the earlier
adjudication." <u>Village of Oak Park</u>, 772 N.E.2d at 953; <u>see also
LaSalle Bank Nat. Ass'n v. Village Of Bull Valley</u>, 826 N.E.2d 449,
456 (Ill. App. 2005) (requiring, in addition to the three elements
listed above, that "the factual issue against which the doctrine is
interposed has actually and necessarily been litigated and
determined in the prior action."). "Even if these threshold
requirements are met the doctrine should not be applied unless it
is clear that no unfairness will result to the party that would be
estopped from re-litigating the issue." <u>Goodwin v. The Board of
Trustees of the University of Illinois</u>, 442 F.3d 611, 621 (7th Cir.
2006). For example, it may be unfair to preclude a party from
contesting an issue if that party was not sufficiently motivated to

litigate the issue in the first proceeding.  See American Family
Mut. Ins. Co. v. Savickas, 739 N.E.2d 445, 451 (Ill. 2000) ("Even
a party who did litigate an issue in a prior case might not be
estopped by the result therein if he can show that the original
litigation was a side show rather than a struggle to the finish.")
(citation and internal quotation marks omitted).  "Incentive to
litigate might be absent, for instance, where the amount at stake
in the first litigation was insignificant, or if the future
litigation was not foreseeable."  Talarico v. Dunlap, 685 N.E.2d
325, 328 (Ill. 1997).

> *a. Whether Felder had sufficient incentive to litigate
> the disputed issue.*

Felder does not challenge the City's contention that the
"threshold requirements" of collateral estoppel are met in this
case.  Felder was a party to the earlier proceeding, and the ALO's
decision was final and on the merits.  (Trans. of Hearing of Oct.
31, 2007 at 12); Municipal Code of Chicago § 2-14-102.  There is,
however, some confusion about the precise "issue" the ALO decided
in the earlier proceeding.  As we interpret the ALO's findings, she
concluded that Felder used his vehicle in committing an ordinance
violation that entailed impoundment, not that Bady or another
officer had probable cause to believe that he had done so.  See
*supra*, n.3; (cf. Pl. Resp. to Def. Stmt. ¶ 24 (agreeing with
defendants' statement that the ALO found "by the preponderance of
the evidence that defendant Officers had probable cause.").)  But

the distinction turns out to be unimportant in this case because the facts establishing the violation — Felder's agreement to pay $10 for oral sex — also established probable cause to make the arrest. <u>See</u> *supra*, n.4. With that clarification, we concur with the parties' apparent agreement that the issue decided in the impoundment hearing was material and identical to the issue Felder seeks to litigate in this case. We also conclude that it was "necessarily" decided — the violation, if there was one, hinged on the exchange between Bady and Felder and which of the two witnesses the ALO found more credible. <u>See</u> <u>Guenther v. Holmgreen</u>, 738 F.2d 879, 884-85 (7th Cir. 1984) ("There can be little doubt that the issue of [arresting officer's] veracity and good faith — the linchpin of Guenther's § 1983 Fourth Amendment claim — was both raised and actually litigated in the preliminary hearing.").

Felder does contend, however, that it would be unfair to apply collateral estoppel because the stakes in the prior proceeding were modest. Felder testified at his deposition that he paid to have his car returned to him shortly after he was released by the police. (Felder Dep. at 75-76.) The hearing occurred more than three months later, and the most that Felder stood to recover was the $1,200 fine he had already paid. By that time, the criminal case against him had been dismissed. But this case differs from the case Felder relies on, <u>Talarico v. Dunlap</u>, 685 N.E.2d 325 (Ill. 1997), in that the ALO heard evidence and resolved the disputed

issue in the prior proceeding. In <u>Talarico</u>, the plaintiff alleged that the defendants negligently prescribed medication that caused him to physically and sexually assault two seemingly random victims. <u>Id.</u> at 326. In his criminal case, the plaintiff pled guilty to two counts of misdemeanor battery, admitting that he had committed his crimes "intentionally and knowingly, without legal justification." <u>Id.</u> The defendants argued that, due to this admission, plaintiff was estopped from asserting that the medication caused him to assault his victims. <u>Id.</u> at 327. The Illinois Supreme Court acknowledged that the collateral-estoppel elements were satisfied, <u>id.</u> at 329, but concluded that it would be unfair to apply that doctrine because the plaintiff lacked incentive to litigate causation in the earlier proceeding. <u>Id.</u> at 330 ("The record makes apparent that the plea was a compromise: never is it conceded that Accutane was not the contributing factor to Talarico's criminal conduct."). Among other factors, the court noted that the plea deal was "generous" — the plaintiff likely would have received a "substantial sentence" if convicted of the crimes he was charged with. <u>Id.</u> at 330-31. Instead, he was sentenced to one-year misdemeanor probation. <u>Id.</u>

In this case, notwithstanding the relatively low stakes, we believe that Felder took the disputed issue, and the hearing itself, "serious[ly]." <u>Cf.</u> <u>id.</u> at 196. As we understand Felder's version of events, he was arrested merely for pulling over to speak

with Bady — sex was never mentioned. (Trans. of Hearing of Oct. 31,
2007 at 18 ("At no point did she mention anything about giving me
any type of oral sex or anything like that."); Felder Dep. at 44-
45, 52-55.) Bady then fabricated Felder's agreement to pay $10 for
oral sex to justify the arrest. (Trans. of Hearing of Oct. 31,
2007 at 10 ("ALO: So this officer is lying. Is that correct?
FELDER: Yes ma'am.").) The ALO was not persuaded, but Felder was
sufficiently motivated to request a hearing and to testify about
what he claims happened.[7] There is no question that further
litigation was "foreseeable" at that time. Talarico, 685 N.E.2d at
328; (see Trans. of Hearing of Oct. 31, 2007 ("And also, I'm filing
a lawsuit against he city for these allegations, for defamation of
character.").) Perhaps Felder would have hired an attorney if more
money had been at stake, notwithstanding his confidence that the
ALO was going to rule in his favor. (Felder Dep., attached as Ex.
C to Def. Stmt., at 85.) In that event, he might have presented a
more organized case, and an attorney likely would have conducted a
more effective cross-examination of Bady. An attorney might also
have requested some pre-hearing discovery. But we have no reason
to believe that the substance of Bady's and Felder's testimony

---

[7] At his deposition, Felder testified that another officer, possibly
Johnson, told him that he "was being arrested for solicitation of prostitution."
(Felder Dep. at 55.) When he asked why, the officer said, "[y]ou just pulled
over. That's good enough for me." (Id.) This indirectly supports Felder's
theory, although there is no evidence that this officer would have known what was
said between Felder and Bady. Even so, Felder could have mentioned this exchange
at his hearing. (Trans. at 10 ("ALO: Ok. Alright. Anything else from you?
FELDER: No.")

would have been any different.[8]  There is no guarantee that a jury
would reach the same conclusion based upon that testimony, but if
that were the standard collateral estoppel would never apply to
administrative decisions.  We conclude that the relatively low
stakes in the earlier proceeding do not warrant denying collateral
estoppel in this case.

   b. *Whether institutional considerations warrant denying
      collateral estoppel.*

Felder also relies on two Illinois Supreme Court cases in
which that court declined to apply collateral estoppel to agency
fact-finding based upon the nature of the agency's mandate.  In
People v. Moore, the court declined to give preclusive effect to
facts found at a driver's license suspension hearing.  561 N.E.2d
648 (Ill. 1990).  Under Illinois law, a motorist's license is
"summarily suspended when he or she either fails a chemical test or
refuses to submit to such a test."  Id. at 650.  The motorist is
then given the opportunity to challenge the suspension at a
hearing.  Id.  The purpose of this procedure is to "promptly

---

   [8]  During discovery in this case plaintiff's attorney deposed Bady for
four hours and she testified consistent with her testimony at the hearing.
Felder's attorney spent significant time at her deposition trying to establish
her subjective state of mind.  What, for instance, did she understand the crime
of "solicitation" to be? (Bady Dep. at 82-128, 195-201.) Although this subject
was not explored at the hearing, it is not relevant in this case.  See Holmes v.
Village of Hoffman Estate, 511 F.3d 673, 679 (7th Cir. 2007) ("Probable cause is
assessed objectively: a court looks at the conclusions that the arresting officer
reasonably might have drawn from the information known to him rather than his
subjective reasons for making the arrest."); Williams v. Jaglowski, 269 F.3d 778,
783 (7th Cir. 2001) ("[T]he arresting officer's knowledge of facts sufficient to
support probable cause is more important to the evaluation of the propriety of
an arrest than the officer's understanding of the legal basis for the arrest.").

remov[e] impaired drivers from the road." Id.  That purpose would
be thwarted, the court concluded, if the facts found at a summary
suspension hearing were preclusive in subsequent criminal
proceedings:

> [T]he practical effect would be that the State or
> municipality could not rely on the sworn police report at
> these proceeding but, rather, would be required to have
> the arresting officer, and other witnesses, testify.  The
> goal of conducting swift hearings for the sole purpose of
> determining whether a court has sufficient reason to
> rescind summary suspension of a motorist's driving
> privileges would be thwarted.

Id. at 651-52.  In Thurmond v. Monroe, the Illinois Supreme Court
denied preclusive effect to facts found in an earlier proceeding in
traffic court.  636 N.E.2d 544 (Ill. 1994).  The plaintiff in
Thurmond alleged that the defendant truck driver negligently caused
a traffic accident in which plaintiff was injured.  Id. at 545-46.
Prior to trial, the plaintiff appeared in traffic court for a
citation arising from the same incident.  Id. at 546.  The traffic
court convicted the plaintiff of improper lane usage — an offense
carrying a fine of $25 plus costs — and specifically found that
plaintiff crossed the center line into the defendant's lane.  Id.
Defendants moved for partial summary judgment in the civil trial,
arguing "that the issue of which party crossed the center line was
first decided by the traffic court." Id. at 548.  The court denied
their motion and the Illinois Supreme Court affirmed.  The traffic
court decided only that the plaintiff had committed a statutory

violation, it did not address the accident itself or other factors that may have contributed to it — including whether the defendant had also crossed the center line.  <u>Id.</u>  Echoing its decision in <u>Moore</u>, the court also noted that "applying collateral estoppel would make traffic court an integral part of a civil action and might have a substantial impact on traffic court proceedings." <u>Id.</u>

Felder argues that the same reasoning applies to impoundment hearings, and that facts decided at those hearings should be not be given preclusive effect because of the impact on the hearing process.  The key factor present in <u>Moore</u> — a legislative mandate to act "swiftly" in the public interest — is missing here.  Felder cites the City's website, which states, among other things, that the Department of Administrative Hearings "provides a forum where ['public disorder, nuisance and blight related offenses'] are heard in a fair, expedient and cost-effective manner."[9]  We assume that all agencies endeavor to be, or purport to be, "fair, expedient and cost-effective."  But that is not grounds for denying preclusion. <u>Thurmond</u> is also distinguishable.  There, the court concluded that the two proceedings addressed materially different issues.  <u>See</u> <u>Thurmond</u>, 636 N.E.2d at 548 (other factors that may have contributed to the accident were beyond the scope of the traffic-court hearing, but "were important in the civil proceeding.").  As

_____

[9]    <u>See</u> http://egov.cityofchicago.org/city/webportal/home.do (follow hyperlinks: "Local Government;" "City Departments;" "Administrative Hearings" and "Information Guide About the Department.").

we understand <u>Thurmond</u>'s efficiency rationale, the court was
concerned that motorists might attempt to introduce irrelevant
details in traffic court if they believed it might influence the
outcome of a subsequent civil suit.  We do not foresee similar
problems in cases like Felder's, in which the ALO is called upon to
decide matters bearing more directly on the elements of the
respondent's civil claim.  <u>See, .e.g.</u>, <u>Goodwin</u>, 442 F.3d at 621
(concluding that the officer presiding over a hearing concerning
the plaintiff's demotion had decided material issues of fact
relevant to the plaintiff's § 1983 claim for employment
discrimination).  The possibility that an ALO's decision may
preclude re-litigation of certain issues in subsequent litigation
may encourage those who request impoundment hearings to retain
counsel, to request pre-hearing discovery, etc. — in short, to
utilize the procedural protections already provided by the agency's
rules and regulations.  We have no reason to believe that this will
unduly burden the City, respondents or the hearing process itself.

In sum, we conclude that Felder cannot re-litigate the ALO's
finding that he agreed to pay Bady for oral sex.  This fact
established probable cause to arrest Felder and defeats his claim
under § 1983, premised on an allegedly illegal seizure, as well as
his common law claim for false arrest.  <u>See</u> <u>Schertz v. Waupaca</u>
<u>County</u>, 875 F.2d 578, 582 (7th Cir. 1989); <u>Lappin v. Costello</u>, 598
N.E.2d 311, 317 (Ill. App. 1992).

**D.  Whether a Finding of Probable Cause Defeats Felder's Claim for Intentional Infliction of Emotional Distress.**

Defendants argue that they are entitled to immunity under Illinois' Tort Immunity Act from Felder's claim for intentional infliction of emotional distress.  Section 10/2-202 of the Act provides that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."  745 ILCS § 10/2-202.  The gravamen of Felder's complaint, including his claim for intentional infliction of emotional distress, is his allegation that the defendants improperly arrested him for soliciting a prostitute.  The arrest, and the fact that the City published his name and the charges against him on a website, see Municipal Code of Chicago § 8-8-060(f), caused him "severe emotional distress and anxiety."  (Pl. Compl. ¶¶ 11, 15.)  Because we have concluded that the defendants had probable cause to arrest him, Felder cannot show that the defendants' conduct was "willful and wanton."  See 745 ILCS § 10/1-210 ("'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."); Ross v. Mauro Chevrolet, 861 N.E.2d 313, 320 (Ill. App. 2006) ("[O]ur conclusions that Officers Kaporis and Pambuku had probable cause to arrest plaintiff and that probable cause supported Officer Pambuku's filing the misdemeanor

charge against plaintiff clearly negate plaintiff's allegations that the officers acted in a willful and wanton manner."). Accordingly, the defendant officers are entitled to immunity under the Tort Immunity Act, as is the City. <u>See</u> 745 ILCS § 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Even if the defendants were not immune from liability, Felder could not establish the elements of intentional infliction of emotional distress on this record. <u>See</u> <u>McGrath v. Fahey</u>, 533 N.E.2d 806, 809 (Ill. 1989) (The defendant's conduct is not actionable unless it is "truly extreme and outrageous."). A lawful arrest, in itself, is not "extreme and outrageous." <u>See</u> <u>McDade v. City of Chicago</u>, 264 F.Supp.2d 730, 734 (N.D. Ill. 2003). Nor has Felder cited any evidence that it was carried out in an extreme and outrageous manner. <u>Id.</u> We conclude that defendants are entitled to summary judgment on plaintiff's claim for intentional infliction of emotional distress.

<u>**CONCLUSION**</u>

Defendant's motion for summary judgment (33) is granted.


DATE:      March 19, 2009


ENTER:     _____

                John F. Grady, United States District Judge